UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JHW GREENTREE CAPITAL, L.P. and :
TMI INTEGRATED HOLDINGS CORP., :
 :
      Plaintiffs, : 05 Civ. 2985 (HB)
 :
   -against- : **OPINION & ORDER**
 :
WHITTIER TRUST COMPANY, as trustee :
of the Gerald G. Loehr Separate Property Trust :
and in its individual capacity, :
WILLIAM C. JOHNSON, as trustee of :
The Gerald G. Loehr Separate Property :
Trust and in his individual capacity, :
TODD B. LOFTIS, and LINDA LOEHR, :
 :
      Defendants. :
 :
------------------------------------------------------------X
**Hon. Harold Baer, Jr., District Judge:**

    Plaintiffs JHW Greentree Capital, L.P. and TMI Integrated Holdings Corp. (collectively "Greentree") brought this action against defendants Whittier Trust Company ("Whittier"), William C. Johnson ("Johnson"), Todd B. Loftis ("Loftis") and Linda Loehr ("Loehr") for, *inter alia*, violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act"). On November 10, 2005 I granted Whittier and Linda Loehr's motion to dismiss the complaint in its entirety. See JHW Greentree Capital, L.P. v. Whittier Trust Co., No. 05 Civ. 2985, 2005 U.S. Dist. LEXIS 27156 (S.D.N.Y. Nov. 10, 2005). I denied Johnson and Loftis' motion to dismiss plaintiff's federal claims, but granted their motion with respect to certain common law claims. Id. Familiarity with my prior Opinion and Order and the recitation of facts therein is assumed. Plaintiffs have now filed an amended complaint, permission for which was afforded in my prior Opinion, and Loehr, Whittier and Johnson move to dismiss this complaint in its entirety.[1]

---
[1] Loftis has indiciated that he joins in this motion to the extent that his co-defendants' arguments support dismissal of the claims against him. Loftis' counsel withdrew from this case shortly before oral argument on this motion. It appears that Loftis, who at the time of argument was awaiting sentencing on federal criminal charges stemming from the conduct alleged herein, does not intend to further litigate this action.

1

I held oral argument on this motion on April 10, 2006. At the conclusion of argument, I granted Whittier's motion to dismiss plaintiffs' section 10(b) claim and denied defendants' motion to dismiss the remaining federal claims. I write now to elucidate my reasons for so holding.

## DISCUSSION

### A. Section 10(b) of the Exchange Act

"To state a cause of action under section 10(b) and Rule 10b-5, a plaintiff must plead that the defendant made a false statement or omitted a material fact [in connection with the purchase or sale of securities], with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2000) (internal quotation omitted). "The requisite state of mind, or scienter, in an action under section 10(b) and Rule 10b-5[] that the plaintiff must allege is an intent to deceive, manipulate or defraud." Id. (internal quotation omitted). The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposed heightened pleading requirements for securities fraud actions. Id. The PSLRA provides that:

> In any private action . . . in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2).

To establish fraudulent intent, a plaintiff may either allege facts showing "that defendants had both motive and opportunity to commit fraud" or allege "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Kalnit, 264 F.3d at 138 (internal quotation omitted). A plaintiff may establish the requisite circumstantial evidence of scienter by alleging that the defendants: "(1) benefited in a concrete and personal way from the purported fraud . . .; (2) engaged in deliberately illegal behavior . . .; (3) knew facts or had access to information suggesting that their public statements were not accurate . . .; or (4) failed to check information they had a duty to monitor." Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000).

2

### 1. Linda Loehr

I granted Linda Loehr's motion to dismiss plaintiffs' original complaint, finding that based on the allegations then plead, Loehr was not responsible for any affirmative misrepresentations made to plaintiffs in connection with the sale of Tools & Metals, Inc. ("TMI"). I also found that plaintiffs had failed to allege that Loehr had a duty to disclose any material adverse information about TMI to the plaintiffs. See Greentree, 2005 U.S. Dist. LEXIS 27156, *20-26. Plaintiffs' amended complaint contains numerous new allegations against Loehr. Plaintiffs now allege, *inter alia*, that: Linda Loehr attended Andrew Loehr's 1998 deposition in the California action at which Andrew Loehr discussed Loftis' fraud on Lockheed (Am. Compl. ¶ 35); Linda Loehr received an email from Loftis in 1999 boasting that TMI's reported cost savings to Lockheed was just "smoke and mirrors" (Id. ¶ 39); in May 2000, Linda Loehr received several emails from another TMI employee warning her of malfeasance involving Loftis and the Lockheed contract (Id. ¶¶ 40-45); and that Linda Loehr received an email from an outside director of TMI, Alan Dunn, stating that Loftis' behavior was "close to the line of criminality." (Id. ¶ 49).

These allegations "constitute strong circumstantial evidence of . . . recklessness." Kalnit, 264 F.3d at 138. However, plaintiffs must also allege that Linda Loehr was responsible for a material misrepresentation or omission. Primary liability for violations of section 10(b) of the Exchange Act "may be imposed. . . on persons who made fraudulent misrepresentations [and] on those who had knowledge of the fraud and assisted in its perpetration." Wright v. Young, 152 F.3d 169, 176 (2d Cir. 1998) (internal quotation omitted). Under the "group pleading doctrine," "plaintiffs may rely on a presumption that statements" in jointly published materials "are the collective work of those individuals with direct involvement in the everyday business of the company." In re Vivendi Universal, S.A. Securities Litigation, 381 F. Supp. 2d 158, 191 (S.D.N.Y. 2003) (Baer, J.) (internal quotation omitted). "Thus, a member of the upper level management . . . who had knowledge of the fraud, and assisted in its perpetration" may be liable under section 10(b). Id.

In granting Loehr's motion to dismiss the original complaint as to her, I noted that "[p]laintiffs [had] not alleged that . . . Loehr was involved in the day to day operations of TMI, nor that she was directly involved in negotiating or drafting the Merger Agreement." Greentree, 2005 U.S. Dist. LEXIS 27156, *22. The amended complaint remedies these defects. Plaintiffs allege that "TMI paid the majority of its operating profits to the Loehr Trust[,]" of which Linda Loehr was the income beneficiary, and that the "[t]rustees were required to distribute all investment income to Linda Loehr." (Am. Compl. ¶ 53). Plaintiffs also allege that Loehr received frequent updates from Loftis regarding TMI's operations and fiscal health. (Id. ¶¶ 56-60). Loehr became a Vice President of TMI in 1997 and remained an officer of the company until it was sold to the plaintiffs. (Id. ¶ 55). In addition, Loftis' communications to other TMI employees evidence Loehr's significant influence over TMI's affairs. In an email from Loftis to another employee dated February 15, 2002, Loftis discussed TMI's cash flow and stated that "[w]henever we have more than $2[million] in cash Linda's attorney starts going deep end [sic.], we need to start burning it quick." (Id. ¶ 61).

Plaintiffs' amended complaint also alleges that Loehr was involved in drafting the Merger Agreement. Plaintiffs allege that Loehr's attorney reviewed and commented on the agreement, and that the trust beneficiaries (including Loehr) approved the deal. (Id. ¶¶ 63-65, 94-96). Plaintiffs further allege that Dunn, who attended various board meetings at which the terms of the merger were discussed, recalls that Loehr was well acquainted with the terms of the agreement and understood the various warranties that it contained. (Id. ¶ 98).

These allegations demonstrate that Linda Loehr was more than a disinterested board member or passive recipient of trust income. The amended complaint alleges that Loehr had significant influence over TMI's affairs and was directly involved in the drafting and approval of the Merger Agreement. Therefore, plaintiffs have adequately alleged that Loehr, who received repeated direct warnings of misconduct involving the Lockheed contract, "had knowledge of the fraud[] and assisted in its perpetration." Vivendi, 381 F. Supp. 2d at 191.

### 2. Whittier

I previously granted Whittier's motion to dismiss plaintiff's section 10(b) claim because plaintiffs had "not allege[d] that Whittier personally engaged in any fraudulent conduct, nor that Whittier even had notice of any fraudulent activity at TMI." Greentree, 2005 U.S. Dist LEXIS 27156, * 17.[2] Plaintiffs now allege that Whittier received a copy of Dunn's September 26, 2002 letter to Johnson, in which Dunn accused Loftis of incompetence and unethical conduct (but did not specifically allege any fraud involving Lockheed). (Am. Compl. ¶¶ 50-52). Plaintiffs also allege that Whittier's representative on TMI's board "rebuffed" Dunn's efforts to discuss his concerns about Loftis. (Id. ¶ 52). Plaintiffs contend that this notice of Loftis' shortcomings rendered false Whittier's representations contained in the Merger Agreement.[3] For example, in the Merger Agreement the sellers (including Whittier) represented that "there were 'no facts [known to the sellers] which could reasonably serve as a basis for any material claim [or] action . . . which . . . could cause a [m]aterial [a]dverse [e]ffect.'" (Id. ¶ 92 (quoting Merger Agreement, § 4.12(a)). Plaintiffs assert that Whittier was aware that Loftis' fitness to be CEO was important to the plaintiffs because the Merger Agreement was conditioned on plaintiffs entering into an employment agreement with Loftis. (Am. Compl. ¶¶ 100-103).

While Whittier may have been reckless in disregarding Dunn's warnings about Loftis, section 10(b) requires an affirmative misrepresentation or omission. Whittier, unlike Linda Loehr, had received no direct warnings regarding the Lockheed fraud. Dunn's allegations regarding Loftis' incompetence did not directly contradict any representations contained in the Merger Agreement. Moreover, Whittier had no duty to disclose Loftis' failings. "[S]ilence in connection with the purchase or sale of securities may operate as a fraud actionable under [section] 10(b) . . . . [if the plaintiff demonstrates] that the defendant had a duty to disclose arising from a relationship of trust and confidence between parties to a transaction." Vento & Co. of New York, L.L.C. v. Metromedia Fiber Network, Inc., 97 Civ. 7751, 1999 WL 147732, * 9 (S.D.N.Y. March 18, 1999) (internal quotation omitted). Under New York law, "[a] duty to speak cannot

---

[2] Originally, Whittier was sued only in its capacity as co-trustee of the Loehr trust. In the amended complaint, plaintiffs also assert claims against Whittier in its individual capacity.

[3] I previously held that the integration clause in the Merger Agreement bars any claim for fraud based on representations not contained within the Merger Agreement itself. Greentree, 2005 U.S. Dist. LEXIS 27156, *10.

arise simply because two parties may have been on opposite sides of a bargaining table." Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). However, such a duty may arise "when one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Id. (internal quotation omitted).

Plaintiffs have not alleged that they had any direct dealings with Whittier that could give rise to a duty to disclose. Moreover, plaintiffs dealt extensively with Loftis throughout the period leading up to the merger. (Am. Compl. ¶ 79). Whittier could have justifiably presumed that plaintiffs' desire to retain Loftis after the sale stemmed from plaintiffs' direct observation of Loftis during the pre-acquisition negotiations. In sum, plaintiffs have failed to allege that Whittier made an actionable misrepresentation or omission.

### 3. Johnson

I previously sustained plaintiffs' section 10(b) claim against Johnson. See Greentree, 2005 U.S. Dist. LEXIS 27156, *18-19. Johnson now argues that the amended complaint is no better in that it fails to allege a primary violation of section 10(b) because: 1) plaintiffs are unable to plead reliance; 2) the fact that Johnson signed the Merger Agreement in his capacity as co-trustee of the Loehr Trust shields him from personal liability from any fraud; and 3) that the representations in the Merger Agreement were only warranted to accord with Johnson's actual knowledge within three years of the sale.

I already determined that plaintiffs adequately plead reliance. Greentree, 2005 U.S. Dist. LEXIS 27156, *11-12. An oblique reference to Andrew Loehr's lawsuit contained in TMI's board minutes, even if cognizable on this motion, does not defeat plaintiffs' allegations that they relied on Johnson's representations. Nor does Johnson's status as agent confer any personal immunity. As I previously held, "if Johnson engaged in fraud, Johnson's misrepresentations may be attributed to the Trust." Id. at * 17. It does not follow that Johnson himself is immune from liability for his own wrongdoing. Finally, plaintiffs have alleged that Johnson received direct warnings of the Lockheed fraud. Thus, he made the representations in the Merger Agreement with reckless

6

disregard for their truth.  Johnson is not absolved because he received Andrew Loehr's warnings more than three years before the merger because, according to plaintiffs' complaint, he did nothing during the ensuing years to insure that those allegations were investigated or rectified.  In sum, Johnson has provided no basis to revisit my earlier conclusion as to the adequacy of plaintiffs' 10(b) claim.

### B.  Section 20(a) of the Exchange Act

"Controlling-person liability" under section 20 of the Exchange Act "is a separate inquiry from that of primary liability and provides an alternative basis of culpability." Suez Equity, 250 F.3d at 101 (internal quotation omitted).  To establish controlling-person liability, a plaintiff must allege: 1) "a primary violation by the controlled person[;]" 2) "control of the primary violator by the targeted defendant[;]" and 3) "that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person."  In re Vivendi, 381 F. Supp. 2d at 189 (internal quotation omitted).

"Control over a primary violator may be established by showing that the controller possessed 'the power to direct or cause the direction of the management and policies of a person. . .'"  In re Blech Securities Litigation, 961 F. Supp. 2d 569, 586 (S.D.N.Y. 1997) (quoting 17 C.F.R. § 240.12b-2).  To defeat a motion to dismiss, a plaintiff must "plead facts which support a reasonable inference that the control person had the potential power to influence and direct the activities of the primary violator." Converse, 1997 WL 742534, * 3.  Conclusory allegations of control are insufficient to allege controlled-person liability.  See In re Deutsche Telekom, 2002 WL 244597, *7.

There is some confusion within this Circuit regarding the content of the culpable participation requirement.  Cf. In re Deutsche Telekom A.G. Securities Litigation, 00 Civ. 9475, 2002 WL 244597, *6 (S.D.N.Y. Feb. 20. 2002) (culpable participation must be pled in accordance with the heightened pleading requirements of the PSLRA); In re Vivendi, 318 F, Supp. 2d at 190 (culpability not subject to heightened pleading requirement); In re Worldcom, Inc. Securities Litigation, 02 Civ. 3288, 2005 WL 638268, *13 (S.D.N.Y. March 21, 2005) (plaintiff need not plead a culpable state of mind to allege culpable participation).

### 1. Linda Loehr

I originally dismissed plaintiffs' section 20(a) claim against Loehr, finding that plaintiffs had plead no facts apart from Loehr's status as a director in support of their allegation that Loehr "controlled" Loftis. See Greentree, 2005 U.S. Dist. LEXIS, 27156, *29-30. However, as set forth in Part A(1) supra, plaintiffs' amended complaint contains numerous allegations with respect to Loehr's influence over Loftis and TMI as well as her involvement in the approval of the merger. These allegations, coupled with plaintiffs' allegations of scienter, suffice to plead a viable 20(a) claim against Loehr.

### 2. Whittier

Plaintiffs now allege (for the first time) a section 20(a) claim against Whittier. Whittier, as co-trustee with Johnson, controlled 90% of TMI's stock and was a party to the Merger Agreement. Thus, Whittier necessarily "possessed the power to direct" Loftis' actions with respect to the sale of TMI. In re Blech Sec. Litig., 961 F. Supp. at 586 (internal quotation omitted). In addition, assuming that section 20(a) requires plaintiffs to allege scienter, the amended complaint adequately alleges that Whittier recklessly disregarded Dunn's warnings regarding Loftis' incompetence and unethical behavior. Thus, plaintiffs have adequately plead a violation of section 20(a) with respect to Whittier.

### 3. Johnson

I previously determined that plaintiffs had plead a viable section 20(a) claim against Johnson. See Greentree, 2005 U.S. Dist. LEXIS 27156, * 28-29. Johnson has provided no reason to revisit my earlier conclusion.

### C. Connecticut Uniform Securities Act ("CUSA") and Texas Uniform Securities Act ("TSA")

The amended complaint alleges primary violations of TSA and CUSA against all defendants and control person liability against Johnson, Whittier and Linda Loehr. (Am. Compl. ¶¶ 138-157, 181-200).[4] Defendants argue that these claims should be dismissed because: 1) New York law governs the merger and there is no sufficient nexus to Texas or Connecticut; 2) Whittier, Johnson and Loehr were not statutory "sellers" under TSA or CUSA; 3) plaintiffs have failed to adequately allege aiding and abetting liability as to Whittier, Johnson or Loehr; and 4) plaintiffs fail to plead control person liability.

I previously noted that the parties "agree[d]" that New York law governed plaintiffs' common law claims. Greentree, 2005 U.S. Dist. LEXIS 27156, *30 n.12. Contrary to defendants' assertions, this statement referred only to the fact that both parties had relied exclusively on New York law in their briefs. I did not engage in a choice of law analysis, nor did I find that the merger itself was governed exclusively by New York law. Defendants also rely on §13.06 of the Merger Agreement, which states that "any cause of arising out of any of the Transaction Documents shall be deemed to have arisen from a transaction of business in the State of New York." (Am. Compl., Ex. A § 13.06). However, this language appears in the section labeled "jurisdiction," and appears to relate to forum selection rather than choice of law. Section 13.05, the choice of law provision, states only that the Merger Agreement itself shall be governed by New York law. Fraud claims "are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract itself also includes a broader forum-selection clause." Finance One Public Co. Ltd. v. Lehman Brothers Spec. Fin., Inc., 414 F.3d 325, 335 (2d Cir. 2005).

Plaintiffs have demonstrated a sufficient nexus with Connecticut and Texas to invoke those states' securities statutes. Defendants, through their agents, solicited plaintiffs in Connecticut to purchase TMI. Due diligence for the deal occurred at TMI's location in Texas. Loftis made misrepresentations while in Texas and transmitted those

---
[4] Although these counts are plead "in the alternative," it does not appear that the two statutes are mutually exclusive.

misrepresentations to Connecticut.[5]  Finally, CUSA section 36b-33, which is limited to transactions in which an "offer to sell" is made in Connecticut, does not preclude CUSA's application to this sale.  Section 36b-3(16) defines offer to include "every attempt or offer to dispose" or "solicitation of an offer to buy" securities.  This extends to defendants' solicitation of plaintiffs in Connecticut.

Equally unavailing is defendants' argument that Loehr, Whittier and Johnson were not statutory sellers within the definition of CUSA section 36b-29 and TSA section 581-33.  Defendants rely on the Supreme Court's interpretation of an analogous federal provision, section 12(a) of the Securities Act of 1933.  In Pinter v. Dahl, 486 U.S. 622, 642, 646 (1988), the Court held that section 12(a) "imposes liability on the owner who passed title, or other interest in the security, to the buyer for value" or upon one who "successfully solicits the purchase, motivated at least in part by a desire to serve [their] own financial interest or those of the securities owner."  Whittier and Johnson, directly and through their agents, solicited the sale of TMI.  Loehr, as income beneficiary of the trust that controlled TMI's shares, possessed an interest in the securities that were sold.  Thus, the defendants were "sellers" within the definitions of CUSA and TSA.[6]

Plaintiffs have also adequately alleged that the defendants aided and abetted securities violations within the definitions of CUSA section 36b-29(a)(2) and TSA section 581(F)(2).  Whittier and Johnson materially assisted the fraud by making the representations contained in the Merger Agreement.  As set forth in Part A(1) supra, Linda Loehr assisted in the perpetration of the fraud as well.  In addition, plaintiffs have adequately plead that each of these defendants acted with scienter.  Finally, as set forth above, plaintiffs have adequately plead control person liability as to Johnson, Whittier and Loftis under section 20(a) of the Exchange Act.  This is as much or more than that which is required to plead control person liability under CUSA section 36b-29(c) and

---

[5] While I have held that the integration clause in the Merger Agreement bars reliance on extra-contractual representations, the integration clause cannot erase the occurrence of extra-contractual negotiations for jurisdictional purposes.

[6] Defendants also argue that they cannot suffer primary liability under CUSA because there is no private right of action under CUSA section 36b-4.  While recent cases construing Connecticut law have held otherwise, see IM Partners v. Debit Direct Ltd., 394 F. Supp. 2d 503, 518 (D. Conn. 2005), in any case section 36b-29 provides a private right of action that appears to be coextensive with the provisions of section 36b-4.

10

TSA section 581-33(F). Thus, defendants' motion to dismiss plaintiffs' control person claims under CUSA and TSA must be denied.

### D. Common Law Claims

As I previously noted, "[t]he requirements for pleading common law fraud, including fraud in the inducement, are essentially identical to the standards for pleading violations of section 10(b) and Rule 10(b)-5." Greentree, 2005 U.S. Dist. LEXIS 27156, *30. Thus, plaintiffs have sufficiently plead fraud with respect to Loehr, Johnson and Loftis, but have failed to plead fraud or fraud in the inducement with respect to Whittier.

I dismissed plaintiffs' fraudulent concealment claims against Johnson as originally plead, finding that plaintiffs had not alleged that they had any direct dealings with Johnson giving rise to a duty to disclose adverse information. See Greentree, 2005 U.S. Dist. LEXIS 27156, *31-32. The amended complaint is similarly deficient. Plaintiffs argue that Johnson's alleged failure to produce Dunn's letter criticizing Lofits during the due diligence process constitutes concealment. However, this failure cannot be attributed to Johnson, since there are no allegations that Johnson was directly involved in producing TMI's records to plaintiffs prior to the sale. Likewise, there are no allegations in the amended complaint that establish a duty on the part of Whittier or Linda Loehr to disclose adverse information. Thus, plaintiffs' fraudulent concealment claim against Loehr, Whittier and Johnson must be dismissed.

Finally, plaintiffs have adequately plead a claim for unjust enrichment against all defendants. Although I previously dismissed this claim with respect to Whittier and Linda Loehr, see Greentree, 2005 U.S. Dist. LEXIS 27156, *35 n.15, plaintiffs have now adequately plead wrongful conduct as to Whittier and Loehr, as well as to Johnson and Loftis.

## CONCLUSION

For the reasons set forth above, Whittier's motion to dismiss is GRANTED with respect to plaintiffs' section 10(b) claim and plaintiffs' claims for fraud, fraudulent inducement and fraudulent concealment. Whittier's motion is DENIED in all other respects. Linda Loehr and Johnson's motion to dismiss is GRANTED with respect to plaintiffs' claim for fraudulent concealment, and DENIED in all other respects. To the extent that Loftis joined in this motion to dismiss the amended complaint, his motion is DENIED. Any motion for summary judgment must be fully-briefed by August 1, 2006 and this case is and will continue to be on the Court's December 2006 trailing trial calendar. The Clerk of the Court is directed to close this motion and remove it from my docket.

**SO ORDERED.**
April 24, 2006
New York, New York

U.S.D.J.